**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| JOSEPH FURANDO,<br><br>        Petitioner<br><br>v.<br><br>WARDEN DAVID ORTIZ<br><br>        Respondent | **Civil Action No. 20-3739(RMB)**<br><br><br>**OPINION**<br><br><br><br>Choose an item. |

**BUMB, District Judge**

    Petitioner Joseph Furando is incarcerated in the Federal Correctional Institution in Fort Dix, New Jersey. On April 7, 2020, he filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241. (Pet., ECF No. 1.) Petitioner seeks home confinement or release under 18 U.S.C. § 3624(c)(2), as amended by § 12003(b)(2) of the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"). (Id.) Petitioner asserts that his age and chronic medical conditions put his health at high risk if he contracts COVID-19, and he fears the Bureau of Prisons ("BOP") is unprepared to protect him from contracting the virus or treating him if he does contract the virus. (Id.) Respondent filed an Answer, opposing habeas relief. (Answer, ECF No. 5.) For the reasons discussed below, the

Court dismisses the petition without prejudice for failure to exhaust administrative remedies.

I.  BACKGROUND

On January 7, 2016, Petitioner was sentenced in the United States District Court, Southern District of Indiana to a 240-month term of incarceration for Conspiracy to Commit Criminal Offense and to Defraud the United States, in violation of 18 U.S.C. § 371; Wire Fraud, in violation of 18 U.S.C. § 1343; False Statements, in violation of 18 U.S.C. § 1001; and Engaging in Prohibited Financial Transactions, in violation of 18 U.S.C. § 1957. (Declaration of James Reiser[1] ("Reiser Decl.") ¶4, ECF No. 5-2 at 2; Ex. 1 (Public Information Inmate Data), ECF No. 5-2 at 7.) Assuming Petitioner receives all good conduct time available, his projected release date is February 5, 2032. (Reiser Decl., Ex. 1, ECF No. 5-2 at 6.)

In response to COVID-19, the BOP has instituted a comprehensive management approach that includes screening, testing, appropriate treatment, prevention, education, and infection control measures. (Declaration of Nicoletta Turner-Foster, M.D.[2] ("Turner-Foster Decl.") ¶4, ECF No. 5-3 at 2.) The BOP has been assessing, on an ongoing, emergent basis, how best to

---

[1] James Reiser is the Case Management Coordinator at FCI Fort Dix. (Reiser Decl., ¶1, ECF No. 5-2 at 1.)

[2] Dr. Turner-Foster is the Clinical Director who oversees all of the clinical staff in the FCI Fort Dix Health Services Department. (Turner-Foster Decl., ¶¶1, 2, ECF No. 5-3 at 1.)

2

ensure the safety and health of its staff and inmates from COVID-19. (Turner-Foster Decl., ¶4, ECF No. 5-3 at 2.) In January 2020, the BOP convened a task force to begin strategic planning for the spread of the virus (Id., ¶5.) After the World Health Organization declared COVID-19 a global pandemic on March 11, 2020, BOP medical professionals have been tracking the outbreak, regularly updating FCI Fort Dix's infection prevention and control protocols, and issuing guidance to field staff on screening and management of potential exposure among inmates. (Id., ¶6.)

On March 13, 2020, the BOP instituted temporary restrictions on visitation, restrictions on inmate movement, increased health screening of staff and inmates, and increased sanitary measures to prevent the spread of COVID-19 in its facilities. (Id., ¶7.)[3] Then, on March 26, 2020, the BOP implemented revised preventative measures by updating its quarantine and isolation procedures to require all newly admitted inmates be assessed using a screening tool and temperature check, and a minimum fourteen day quarantine for asymptomatic inmates. (Turner-Foster Decl., ¶8, ECF NO. 5-3 at

---

[3] Dr. Turner-Foster cites to the BOP website at https://www.bop.gov/resources/news/pdfs/20200324_bop_press_release_covid19_update.pdf (last visited Apr. 16, 2020).

The Court may take judicial notice of public records and government documents on websites run by government agencies. See e.g., Maliandi v. Montclair State Univ., 845 F.3d 77, 89 n.10 (3d Cir. 2016) ("Although these documents were not part of the record before the District Court, we may take judicial notice of them because they are 'public documents'….")

3.) As of April 1, 2020, every inmate in the BOP is required to be secured in their cell or housing unit for a 14-day period in order to minimize the spread of the virus. (Id., ¶9). FCI Fort Dix has implemented these measures. (Id., ¶10.)

The FCI Fort Dix Health Services Department, staffed with nurses, mid-level practitioners and physicians, provides medical care to any inmate who becomes infected with COVID-19. (Id., ¶12, ECF No. 5-3 at 4.) If an inmate has signs of COVID-19, he is immediately placed in medical isolation, separated from noninfected inmates. (Id., ¶11.) The housing unit in which the inmate had resided is placed on a formal quarantine, necessitating inmates and staff in that housing unit to wear Personal Protective Equipment ("PPE") for a minimum of 14 days. (Id.) If an inmate's medical condition declines so that he can no longer be treated at the institution, he will be transported to a local outside hospital. (Id., ¶12.) There are sufficient staff to escort inmates to the hospital, and no inmate will be denied transport to the hospital when transportation is necessary. (Id.)

As of Thursday April 16, 2020, FCI Fort Dix has five inmates who have tested positive for COVID-19. (Id., ¶13.) All such inmates are in the minimum security camp, isolated together in a unit. (Id.) To date, no inmates in the FCI Fort Dix low security compound have tested positive for the virus. (Turner-Foster Decl., ¶13, ECF

No. 5-3 at 4.) The Camp is physically located outside of the low security secured compound. (Id.)

Initially, Petitioner was ineligible for discretionary release to home confinement under 18 U.S.C. § 3624(c)(2), as modified by The CARES Act. (Reiser Decl., ¶4, ECF No. 5-2 at 2.) On April 15, 2020, the BOP issued additional guidance regarding home confinement and modified the original criteria. (Id., ¶5, ECF No. 5-2 at 3.) Under the new criteria, Petitioner was considered for release to home confinement on April 16, 2020. (Id., ¶6.) The final decision is pending. (Id.) Petitioner did not exhaust his administrative remedies prior to filing the present petition. (Declaration of Christina Clark[4] ("Clark Decl.") ¶4; ECF No. 5-1 at 2;  Ex. 1, ECF No. 5-1 at 5-7.)

II. DISCUSSION

    A.   Standard of Law

A federal prisoner may challenge the execution of his or her sentence in a petition for a writ of habeas corpus under 28 U.S.C. § 2241. Woodall v. Fed. Bureau of Prisons, 432 F.3d 235, 243-44 (3d Cir. 2005); Coady v. Vaughn, 251 F.3d 480, 485 (3d Cir. 2001). 28 U.S.C. § 2241(c)(3) provides: "The writ of habeas corpus shall not extend to a prisoner unless-- (3) He is in custody in violation of the Constitution or laws or treaties of the United States…."

---

[4] Senior Attorney Advisor at FCI Fort Dix.

5

Petitioner challenges his detention in FCI Fort Dix under The CARES Act. Before The CARES Act was passed, 18 U.S.C. § 3624(c)(2) provided the BOP with the authority to "place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." 18 U.S.C. § 3624(c)(2) (effective July 19, 2019). As part of The CARES Act, Congress sought to address the spread of the coronavirus in prisons by permitting BOP to expand the use of home confinement under § 3624(c)(2). See Pub. L. No. 116-36, § 12003(b)(2). Upon direction of the Attorney General, Section 12003(b)(2) of the CARES Act temporarily suspends the limitation of home confinement to the shorter of 10 percent of the inmate's sentence or 6 months.

By memorandum dated March 26, 2020, the Attorney General directed the BOP to "prioritize the use of [its] various statutory authorities to grant home confinement for inmates seeking transfer in connection with the ongoing COVID-19 pandemic."[5] The Attorney General specifically directed the BOP to consider the totality of the circumstances of each inmate, the statutory requirements for home confinement, and a non-exhaustive list of discretionary factors including: the age and vulnerability of the inmate; the security level of the facility holding the inmate; the inmate's conduct while incarcerated; the inmate's score under the Prisoner

---

[5]  See https://www.bop.gov/coronavirus/docs/bop_memo_home_confinement.pdf (last visited Apr. 16, 2020).

6

Assessment Tool Targeting Estimated Risk and Needs ("PATTERN"); whether the inmate has a demonstrated and verifiable reentry plan that will prevent recidivism and ensure public safety (including verification that the conditions under which the inmate would be confined upon release would present a lower risk of contracting COVID-19 than the inmate would face at their current facility); and the inmate's crime of conviction. (Reiser, Decl. ¶3, ECF No. 5-2 at 2.)

On April 3, 2020, the Attorney General exercised authority under The CARES Act to further increase home confinement.[6] The Attorney General authorized the Director of the BOP to immediately maximize transfers to home confinement of all appropriate inmates held at FCI Oakdale, FCI Danbury, FCI Elton, and other similarly situated Bureau facilities where COVID-19 was materially affecting operations.[7]

On April 5, 2020, the BOP gave the following guidance on COVID-19 and home confinement:

> Inmates do not need to apply to be considered for home confinement. Case management staff are urgently reviewing all inmates to determine which ones meet the criteria established by the Attorney General. The Department has also increased resources to review and

---

[6] See https://www.bop.gov/coronavirus/docs/bop_memo_home_confinement_april3.pdf (last visited on Apr. 16, 2020).

[7] Id.

7

> make appropriate determinations as soon as possible. While all inmates are being reviewed for suitability, any inmate who believes they are [sic] eligible may request to be referred to Home Confinement and provide a release plan to their Case Manager. The BOP may contact family members to gather needed information when making decisions concerning Home Confinement placement.[8]

Importantly, on April 15, 2020, the BOP issued additional guidance regarding home confinement under the CARES Act, removing the requirement that the inmate serve up to two-thirds of the sentence imposed before eligibility for home confinement. (Reiser Decl., ¶5, ECF No. 5-2 at 3.) The new criteria include the following:

> a. Primary or Prior Offense is not violent;
>
> b. Primary or Prior Offense is not a sex offense;
>
> c. Primary or Prior Offense is not terrorism;
>
> d. No detainer;
>
> e. Mental Health Care Level is less than IV;
>
> f. PATTERN (First Step Act tool used to determine risk of recidivism) is Minimum;
>
> g. No incident reports in past 12 months;
>
> h. U.S. Citizen; and
>
> i. Viable Release Plan.

---

[8] See https://www.bop.gov/resources/news/20200405_COVID19_home_confinement.jsp (last visited Apr. 16, 2020).

(Reiser Decl., ¶5, ECF No. 5-2 at 3,) An inmate's Unit Team evaluates an inmate to make a recommendation as to whether release to home confinement is appropriate. (Id., ¶6.)

If an inmate is deemed appropriate for home confinement, the Unit Team will forward its recommendation to the Warden and then to the Residential Reentry Manger for a home confinement date in the inmate's release district. (Id.) If an inmate is granted home confinement, he or she will be quarantined for a 14-day period prior to transfer, based on the Attorney General's guidance. (Id.)

There is a judicially created exhaustion requirement for habeas petitions brought under 28 U.S.C. § 2241. Callwood v. Enos, 230 F.3d 627, 633-34 (3d Cir. 2000). Because the exhaustion requirement is not jurisdictional, in exceptional cases a petitioner may be excused from exhaustion. See e.g. Gambino v. Morris, 134 F.3d 156, 171 (3d Cir. 1998). In the typical case, an inmate's failure to exhaust all stages of the administrative remedy system prior to the filing of a habeas petition under 28 U.S.C. § 2241 is a proper basis for dismissal. Moscato v. Fed. Bureau of Prisons, 98 F.3d 757, 761-62 (3d Cir. 1996). The purposes of the exhaustion requirement include:  (1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing

agencies the opportunity to correct their own errors fosters administrative autonomy. Moscato, 98 F.3d at 761-62.

The administrative remedy procedure for the BOP is set forth at 28 C.F.R. §§ 542.10 to 542.19. The procedure provides formal review of any complaint that relates to any aspect of the inmate's confinement. 28 C.F.R. § 542.10(a). For most complaints, inmates must first attempt to resolve the complaint informally with institution staff. 28 C.F.R. § 542.13(a). If that fails, the inmate may file an administrative remedy request with the Warden of the institution, within 20 calendar days of the date on which the basis for the request occurred. 28 C.F.R. § 542.14(a). If the Warden denies the request, the inmate may file an appeal with the Regional Director, within 20 calendar days of the date the Warden signed the response. 28 C.F.R. § 542.15(a). If the Regional Director denies the appeal, the inmate may appeal that decision to the General Counsel of the Federal Bureau of Prisons, within 30 calendar days from the date the Regional Director signed the response. Id. Appeal to the General Counsel is the final administrative appeal. Id. "If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18.

B.  Analysis

Respondent argues that the petition should be dismissed because Petitioner failed to exhaust administrative remedies. (Answer, ECF No. 5 at 11-13.) Prior to filing the petition, Petitioner had not filed any administrative remedy request for home confinement. (Clark Decl., ¶4, ECF No. 5-1 at 2; Ex. 1, ECF No. 5-1 at 5-7.) Respondent correctly points out that Petitioner has not offered any justification for his failure to exhaust prior to filing the present petition. Thus, the Court will not address whether exhaustion is futile. See Brown v. Grondolsky, No. 09-3290 (RMB), 2009 WL 2778437, at *1-2 (D.N.J. Aug. 31, 2009) (noting that the exhaustion requirement "is diligently enforced by the federal courts" and futility exception applies only in "narrowly-defined circumstances") (citation omitted). Moreover, the BOP is now in the process of reviewing Petitioner's eligibility for home confinement; and his eligibility is no longer constrained by the requirement that an inmate must first serve two-thirds of his sentence. (Reiser Decl., ¶¶4-5, ECF No. 5-2 at 2-3.) The Court agrees that review of the BOP's exercise of its responsibilities under 18 U.S.C. § 3624(c)(2) is premature.

Petitioner also requested the Court to order his immediate release from prison. The Court finds that immediate release is an improper remedy because Petitioner has not served his full

sentence[9] and there are other avenues to protect him against the threat of COVID-19. The BOP appears to be taking sufficient measures at this time to identify those eligible for home confinement and to reduce the spread of the virus and treat those who have contracted the virus.

Further, to the extent that Petitioner seeks review of the BOP's home confinement placement decision, the petition is premature. The BOP is in the process of considering Petitioner for home confinement. (Reiser Decl., ¶6, ECF No. 5-2 at 3.) Respondent will provide the Court an update as to Petitioner's status as soon as that information is available. (Answer, ECF No. 5 at 17.)

III. CONCLUSION

For the reasons discussed above, the Court will dismiss the petition without prejudice for failure to exhaust administrative remedies. The Court will leave this matter open for Respondent to submit a status update on the BOP's review of Petitioner's eligibility for home confinement. If the BOP denies Petitioner's request for home confinement, Petitioner will be given an opportunity to submit an amended petition. If Petitioner ultimately files an amended petition, he should address the administrative exhaustion requirement, as well as pay the filing fee or submit an IFP application under 28 U.S.C. § 1915(a).

---

[9] See Reiser Decl., ¶4, ECF No. 5-2 at 2.

Date:  **April 20, 2020**

                                                              <u>s/Renée Marie Bumb</u>
                                                              **RENÉE MARIE BUMB**
                                                              **United States District Judge**